COURT OF APPEALS
DECISION
DATED AND FILED

December 7, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP241**

Cir. Ct. No. **2020TR5481**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

COLUMBIA COUNTY,

PLAINTIFF-RESPONDENT,

V.

CARTER RAY SMITS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Columbia County: TROY D. CROSS, Judge. *Affirmed*.

¶1 KLOPPENBURG, P.J.[1] A jury found Carter Smits guilty of operating a motor vehicle with a prohibited alcohol concentration, defined by

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

statute as .08 or above, and the circuit court entered judgment consistent with the verdict.[2] Smits appeals, arguing that the verdict was not supported by clear and convincing evidence. Specifically, Smits argues that his blood test result, showing a blood alcohol concentration of .08, did not prove his guilt by clear and convincing evidence because of uncontroverted testimony that the test result was subject to a margin of error of "plus or minus 0.005." I reject his argument and, therefore, affirm.

## BACKGROUND

¶2    Smits was arrested following a traffic stop and subsequently issued citations for speeding, driving with open intoxicants, operating while under the influence of an intoxicant as a first offense, and operating with a prohibited alcohol concentration as a first offense. The case proceeded to a jury trial, at which the arresting officer and a forensic scientist at the Wisconsin State Laboratory of Hygiene testified.

¶3    The arresting officer testified as follows. He was on patrol overnight from August 15 to 16, 2020. At about midnight, he stopped a vehicle for suspected speeding. Before the vehicle pulled over, the officer had followed the vehicle on a hilly route that included numerous curves and observed no improper driving other than the vehicle's speed. Smits was the driver and only occupant in the vehicle. The officer detected the odor of alcohol emitting from the vehicle and Smits' person, and saw an open beer can in the cup holders near the center

---

[2] *See* WIS. STAT. §§ 346.63(1)(b) (providing that no person may operate a motor vehicle with a prohibited alcohol concentration) and 340.01(46m) (defining "prohibited alcohol concentration" as "an alcohol concentration of .08 or more").

console.  When the officer searched the vehicle, he found the open beer can in the center console cup holder, which was one-third full, an empty hard lemonade bottle on the floor board of the passenger's seat, a "White Claw" in the door panel of the passenger door, and a cooler in the back containing alcoholic beverages. The officer then administered field sobriety tests and observed on two of the three tests clues indicating that Smits was impaired and "had consumed intoxicants." During the testing, the officer also saw that Smits had bloodshot, glossy eyes.  The officer then arrested Smits, obtained Smits' consent to have his blood drawn, and took Smits to the hospital for the blood draw.  The blood draw took place within an hour of the stop.  Smits was cooperative and followed the officer's directions throughout the encounter.

¶4     The forensic scientist in the Forensic Toxicology program at the State Laboratory of Hygiene testified on direct examination as follows.  She was the peer reviewer for the testing of the sample of Smits' blood.  She signed the State Laboratory of Hygiene report, which shows a blood alcohol concentration of .08, verifying that the result on the report is reliable and "reflects the testing that was done at the lab and the result of that testing."  In judging the quality of the testing, the laboratory allows a "variability [of] plus or minus 0.005."  This allowed variability "acknowledge[s] that there's actually a window around [the reported] value where the true result lies."  This allowed variability is not reflected in the test report, but is reflected in "judging the quality of any given day's testing and making sure that the calibrators [] and the quality control materials meet their target windows."

¶5     The forensic scientist testified on cross examination that the allowed variability for Smits' test result means that it is 95 to 99 percent certain that the actual result lies somewhere between .075 and .085.  When asked if "there's an

3

equal chance that [the test result] is below .08 as there is that it's above," she answered, "Yes."

¶6      After the County rested its case, the circuit court granted Smits' motion for a directed verdict dismissing the speeding charge based on the County's failure to meet its burden of proof.  The court denied Smits' motion for a directed verdict dismissing the operating with a prohibited alcohol concentration charge, ruling that there was "adequate evidence … that the jury could find that by evidence to a clear, satisfactory, convincing standard[] that [Smits] was operating" at or above .08.  Smits did not call any witnesses, and the jury went into deliberations.

¶7      During deliberations, the jury requested and was given a copy of the State Laboratory of Hygiene report which had been offered and received into evidence and showed the .08 alcohol concentration result.

¶8      The jury returned verdicts finding Smits guilty of driving with open intoxicants and of operating with a prohibited alcohol concentration, and not guilty of operating while under the influence of an intoxicant.

¶9      The circuit court denied Smits' motion for judgment notwithstanding the verdict on the operating with a prohibited alcohol concentration charge, and entered judgments of conviction consistent with the verdicts.

¶10      Smits appeals the conviction for operating with a prohibited alcohol concentration.

**DISCUSSION**

¶11     The parties agree that the County's burden of proof in this civil case is clear and convincing evidence.  *See **City of Milwaukee v. Wilson***, 96 Wis. 2d 11, 22, 291 N.W.2d 452 (1980) (stating that, in forfeiture actions that involve or are closely associated with acts of a criminal nature, the County must prove a defendant's guilt by clear and convincing evidence); *see also* WIS. STAT. § 345.45 (standard of proof for conviction of a violation of a traffic regulation is clear and convincing evidence).  Smits argues that the circuit court erred in denying his motions for directed verdict and for judgment notwithstanding the verdict, because the County did not present clear and convincing evidence that he was operating with a blood alcohol concentration of .08 or above.

¶12     Whether to grant a motion for a directed verdict is subject to this court's de novo review.  *See **Millonig v. Bakken***, 112 Wis. 2d 445, 450, 334 N.W.2d 80 (1983).  "The general underlying principle is that the jury is to be the trier of the facts and, in any circumstances where the facts are disputed or where different inferences may be drawn from the facts, the jury is to be the factfinder." *Id.* at 449.  "Thus, a verdict should be directed only where there is no conflicting evidence as to any material issue and the evidence permits only one reasonable inference or conclusion." *Id.* at 451; WIS. STAT. § 805.14(1) (a directed verdict motion should be denied "unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party").  The reviewing court must affirm a ruling to deny a motion for a directed verdict provided there exists any evidence that supports the nonmoving party's claim.  ***Wisconsin Natural Gas v. Ford, Bacon & Davis Constr. Co.***, 96 Wis. 2d 314, 336, 291 N.W.2d 825 (1980).  A review of the

evidence at trial is required to determine whether any material facts were in dispute and were properly left to the jury's determination. *City of Omro v. Brooks*, 104 Wis. 2d 351, 353, 311 N.W.2d 620 (1981).

¶13    Here, the evidence before the jury included the blood test result of .08 and the forensic scientist's testimony as to its margin of error of plus or minus .005, which meant that it was equally likely that the actual result was below or above .08.[3]   The evidence also included the officer's testimony that there were open and empty or nearly empty containers of alcoholic beverages in the vehicle, that Smits was the only person in the vehicle, that the odor of alcohol emitted from both the vehicle and Smits' person, that Smits had red and glossy eyes, and that Smits showed clues indicating his having consumed intoxicants on two of the three field sobriety tests.   A jury could reach more than one reasonable inference or conclusion as to whether the County had presented clear and convincing evidence that Smits' actual blood alcohol concentration was .08 or above, i.e., within the margin of error at or above but not below the .08 test result, given the other evidence of his having consumed intoxicants.   *See* WIS. STAT. § 885.235(4) ("[T]he admissibility of chemical tests for alcohol concentration or intoxication … shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether or not a person was under the influence of an intoxicant … [or] had a specified alcohol concentration ….").   That is, a reasonable jury could find that the County had proven by clear and convincing evidence that Smits was operating with a blood alcohol concentration of .08 or

---

[3] Smits inaccurately frames this testimony as stating that it was equally likely that his blood alcohol concentration "was above or below the legal limit," rather than above or below .08, which is illegal, not legal.

between .08 and .085. Thus, the circuit court did not err in denying Smits' motion for directed verdict and leaving the question for the jury to decide.

¶14 This court's review of a denial of a motion for judgment notwithstanding the verdict is also de novo. *Fricano v. Bank of America NA*, 2016 WI App 11, ¶19, 366 Wis. 2d 748, 875 N.W.2d 143 (2015). A motion for judgment notwithstanding the verdict does not challenge the sufficiency of the evidence; rather, "such a motion 'admits for purposes of the motion that the findings of the verdict are true, but asserts that judgment should be granted the moving party on grounds other than those decided by the jury.'" *Id.* (quoted source omitted); *see also* WIS. STAT. § 805.14(5)(b) (motions for judgment notwithstanding the verdict are reserved for instances when a party believes that "the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, [the moving party] should have judgment").

¶15 As stated, Smits contends that the circuit court should have granted his motion for judgment notwithstanding the verdict because the jury's verdict was not supported by clear and convincing evidence of guilt. This court's task as a reviewing court is limited to determining whether the evidence presented could have convinced a trier of fact, acting reasonably, that the appropriate burden of proof has been met. *Wilson*, 96 Wis. 2d at 21.

¶16 For the same reason that Smits' motion for directed verdict was properly denied—that, viewed under the clear and convincing standard, the evidence presented raised a question as to whether Smits was operating with an alcohol concentration of .08 or more and permitted more than one reasonable inference on that point—so his motion for judgment notwithstanding the verdict was also properly denied. It cannot be said that all of the evidence summarized

above was "so insufficient in probative value and force that ... no trier of fact, acting reasonably, could have found guilt" by clear and convincing evidence. *See* *State v. Schwebke*, 2002 WI 55, ¶40, 253 Wis. 2d 1, 644 N.W.2d 666. Thus, I conclude that there was adequate evidence from which the jury could determine that the County met its burden of proof.[4]

¶17 Smits's arguments to the contrary do not persuade. Smits correctly states that "[b]oth questions [regarding the denial of his motions for directed verdict and judgment notwithstanding the verdict] hinge on whether credible evidence or reasonable inferences from it could clearly and convincingly prove that Mr. Smits had a [blood alcohol concentration] of .08 or higher." Smits argues that both questions must be answered in the negative because the blood test result, accompanied by its margin of error, was "the only evidence" of Smits' blood alcohol concentration and, therefore, "the sole evidence" before the jury to support the verdict, "without any evidence [the jury] could use to tip the scale" within the margin of error. This argument ignores the other evidence, summarized above, that the jury could have also considered to "tip the scale" and infer that Smits' blood alcohol concentration was within the range of margin of error at .08 or above.

¶18 Smits acknowledges that "other evidence could reasonably support the test result by showing indications of impairment or alcohol intoxication," but

---

[4] Smits' statement of the issue in his appellant's brief suggests that he may also be arguing that the evidence was insufficient to find Smits guilty of driving with a prohibited alcohol concentration. I do not consider this argument because it is undeveloped and unsupported by legal authority. *See* *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that this court may decline to consider arguments that are unsupported by references to legal authority and inadequately briefed).

argues that there was no such evidence here, as reflected in the jury's verdict acquitting Smits of driving while under the influence of an intoxicant. However, as the circuit court instructed the jury:

> Not every person who has consumed alcoholic beverages is "under the influence" as that term is used here. What must be established is that the person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand as is necessary to handle and control a motor vehicle. It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control the vehicle be impaired.

*See* WIS JI—CRIMINAL 2668 (2015). That the jury found that the County did not prove by clear and convincing evidence that Smits' ability to safely control his vehicle was impaired does not negate the conclusion, as explained above, that the evidence sufficed under the clear and convincing standard to show that Smits' alcohol concentration was at .08 or above.[5]

## CONCLUSION

¶19     For the reasons stated, the judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] Smits faults the circuit court for paying inadequate "attention" to the evidence before the jury. This assertion is neither supported by the record nor appropriate.