STATE of Wisconsin, Plaintiff-Respondent,

v.

Justin KOLP, Defendant-Appellant.

Court of Appeals

*No. 01–0549–CR. Submitted on briefs November 6, 2001.—
Decided December 27, 2001.*

2002 WI App 17

(Also reported in 640 N.W.2d 551.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Jennifer L. Abbott* of *Abbott & Kingsley*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. Justin Kolp appeals from the judgment of conviction, following his guilty plea, for possession of marijuana with intent to deliver, contrary to Wis. Stat. §§ 961.01(14), 961.14(4)(t), and 961.41(1m)(h)1 (1999–2000).[1] Kolp contends that the trial court erred in denying his motion to suppress.[2] The police found drugs on Kolp's person during a pat-down search which occurred after he had knocked on the back door of a house during the execution of a search warrant for drugs and was then escorted into the house by a police officer. Kolp argues that the pat-down was unlawful because: (1) the search warrant only authorized a search for evidence of the crime of possession of controlled substances, not for the more serious offense of possession of controlled substances with intent to deliver; thus, the pat-down search was unwarranted under *State v. Guy*, 172 Wis. 2d 86, 492 N.W.2d 311 (1992); and (2) the search warrant's authorization to search the occupants of the house could not serve as the basis for the pat-down because Kolp was not an "occupant" of the house, having been admitted by the police rather than a resident. Because we are satisfied that the brief pat-down search was reasonable under *Guy*, we affirm. Accordingly, we need not discuss Kolp's second argument. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (stating that only dispositive issues need be addressed).

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] A defendant may appeal from an order denying a motion to suppress evidence even though the judgment of conviction rests on a guilty plea. Wis. Stat. § 971.31(10).

## I. BACKGROUND.

¶ 2. After receiving an anonymous tip that a resident of a home in West Allis was smoking "weed," West Allis Police conducted six garbage searches of the home over the course of several weeks.[3] Four of these searches yielded marijuana stems, marijuana seeds, drug residue, packaging associated with drugs, and other paraphernalia commonly used with marijuana consumption. Based upon the anonymous tip and these search results, the police obtained a search warrant for the home which was executed on March 21, 2000. The search warrant, issued by a court commissioner, authorized the search of all persons present on the premises. Although it permitted the police to search for "Possession of Controlled Substances (Marijuana) (THC)," it also had a line drawn through the request to search for evidence of "Possession of a Controlled Substance with Intent to Deliver (Marijuana) (THC)." The search warrant also authorized the search for specific items, including marijuana, scales, plastic baggies, drug-related paraphernalia, weapons, beepers and money.

¶ 3. While executing the warrant, a detective heard someone knocking on the back door. The detective went to the back of the house where he observed Kolp, who had crossed an enclosed porch and was standing at the inner back door. The detective told Kolp to come in, and at the same time held onto his elbow and guided him into the kitchen. Once in the kitchen, the detective patted down Kolp for the officers' safety. In the process, the officer felt two objects that he

---

[3] A garbage search is a search of the garbage from a suspect's household by police. *See generally California v. Greenwood*, 486 U.S. 35 (1988); *State v. Stevens*, 123 Wis. 2d 303, 367 N.W.2d 788 (1985).

thought were consistent with packages containing drugs. The officer seized the contents of the packages, which weighed over 52 grams and later tested positive for marijuana. Once at the police station, Kolp gave an incriminating statement. Kolp was charged with possession of a controlled substance with intent to deliver. At a hearing, he argued that the drugs found during the search should be suppressed. His motion was denied and Kolp pled guilty to the charge.

## II. ANALYSIS.

¶ 4. Kolp submits that the trial court erred in denying his motion to suppress the contraband found on his person because: (1) the *Terry* [4] stop requirements were not present as the search warrant only authorized a search for evidence of possession of controlled substances, not the more serious crime of possession of a controlled substance with intent to deliver and, thus, unlike the situation in *State v. Guy*, 172 Wis. 2d 86, 492 N.W.2d 311 (1992), the reasonable suspicion that drug traffickers often carry weapons was not implicated here; and (2) Kolp could not be considered an occupant of the home because he was not invited in by a resident.

¶ 5. Kolp challenges the search and seizure under both the United States and Wisconsin Constitutions. The Fourth Amendment to the United States Constitution and Article 1, § 11 of the Wisconsin Constitution, guarantee citizens the right to be free from "unreason-

---

[4] *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

able searches."[5] This court, in construing Article 1, § 11 of the Wisconsin Constitution, consistently follows the United States Supreme Court's interpretation of the Fourth Amendment. *State v. Betterley*, 191 Wis. 2d 406, 416, 529 N.W.2d 216 (1995). Upon review of an order denying suppression, this court will uphold the trial court's findings of fact unless they are against the " 'great weight and clear preponderance of the evidence.' " *State v. Kiper*, 193 Wis. 2d 69, 79, 532 N.W.2d 698 (1995) (quoting *State v. Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990)). Whether the facts satisfy the constitutional requirement of reasonableness is a question of law, which this court reviews *de novo. See State v. Young*, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997). Whether the search here passes constitutional muster is a question of law. *See Guy*, 172 Wis. 2d at 86.

¶ 6. A frisk for weapons is a search. *Id.* at 93. In determining whether a search is reasonable, this court balances the need for the search against the invasion of

---

[5] The Fourth Amendment to the Constitution of the United States provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, § 11 of the Wisconsin Constitution provides:

**Searches and seizures.** SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not. be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

the suspect's privacy entailed in the search. *Id.* Pat-down searches are justified when an officer has reasonable suspicion that a suspect may be armed. *Id.* at 94. The officer's reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Richardson*, 156 Wis. 2d at 139 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The test is objective:

> [T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger. . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his [or her] experience.

*Guy*, 172 Wis. 2d at 94 (citation omitted). Finally, the determination of reasonableness is made in light of the totality of the circumstances known to the searching officer. *Richardson*, 156 Wis. 2d at 139–40.

¶ 7. Thus, the issue is whether the searching officer had a reasonable suspicion that Kolp was armed. Here, the police were conducting a search for drugs. As noted in *Guy*, "[t]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence." *Id.* at 96 (citations omitted). The officer who searched Kolp had twelve years of experience, and testified that for approximately the last three years he had executed in excess of 100 search warrants per year. He also testified that he has executed search warrants where weapons were found. He volunteered that, in his opinion, people involved in drugs often carry weapons. Consequently, he stated that when he is

carrying out a search warrant for drugs, it is common for him to search everyone present at a residence for weapons. Given this information and the officer's experience, we conclude that the arresting officer had a reasonable suspicion that a party knocking on the door of a house being searched for drugs could be carrying a weapon.

¶ 8. Kolp argues that his situation is more like the facts found in *Ybarra v. Illinois*, 444 U.S. 85 (1979), where officers found heroin during a frisk of a bar patron while executing a search warrant for drugs at the bar. *Id.* at 88–89. There, the Supreme Court held that the frisk was unconstitutional. *Id.* at 96. However, "[t]he frisk in *Ybarra* took place in a public tavern where people came and went and legally conducted business." *Guy*, 172 Wis. 2d at 98.

¶ 9. In contrast, the search of Kolp took place at a private home where, apparently, Kolp knew the occupants of the house because he entered an enclosed porch and knocked at the back inner door rather than knocking at the door of the porch or the front door. Moreover, as our supreme court observed in *Guy*, "executing a search warrant in a home can be more dangerous than doing so in a public place." *Guy*, 172 Wis. 2d at 98.

¶ 10. Kolp also argues that because the search warrant was not issued for possession of a controlled substance with intent to deliver, no large amounts of drugs were suspected and no drug trafficking was indicated. In this context, however, we do not distinguish between major and insignificant drug dealers or users in determining whether a frisk is reasonable. As noted in *Guy*, "[p]olice must be able to react flexibly when executing a search warrant," and "[t]o require police to distinguish between major and insignificant

dealers or users before making a limited frisk for weapons would be impractical and could unreasonably put officers in danger." *Id.* at 99.

¶ 11. Thus, under the circumstances, we conclude that the arresting officer had a reasonable suspicion that Kolp may have been armed.[6] Accordingly, we affirm the trial court's decision to deny Kolp's motion to suppress and enter judgment against the defendant.

*By the Court.*—Judgment affirmed.

---

[6] Kolp does not dispute the right of the police to seize what the officer believed to be two bags containing drugs. Kolp also argues that if the *Terry* stop requirements were not met here, the police could not utilize the search warrant's authorization to search all the occupants of the home because he was not an occupant, inasmuch as the police let him in, and not a resident of the household. Since we have determined that the frisk was reasonable, we need not address this issue.